[Crim. No. 28593. Second Dist., Div. Five. Nov. 10, 1976.]

In re ZSUZSANNA BARTHA on Habeas Corpus.

**COUNSEL**

Buckley & Siegel, Marguerite M. Buckley and Marie Colaneri for Petitioner.

Burt Pines, City Attorney, Ward G. McConnell and Mark L. Brown, Deputy City Attorneys, for Respondent.

**OPINION**

**ASHBY, J.**—Petitioner Zsuzsanna Bartha, also known as Z. Budapest, was convicted in Los Angeles Municipal Court of a misdemeanor,

violation of Los Angeles Municipal Code section 43.30, fortunetelling.[1] The appellate department of the superior court affirmed the judgment and denied a motion to certify the case to the Court of Appeal pursuant to rule 63 of the California Rules of Court. Contending that the ordinance is unconstitutional, petitioner filed this petition for a writ of habeas corpus. (See *In re Zerbe,* 60 Cal.2d 666, 667-668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840].)

Petitioner advertised her fortunetelling business in a local newspaper in the Venice area of Los Angeles. The ad stated: "The Feminist Wicca. Detailed tarot card readings, occult supplies, magical jewels, books, herbs," giving her address and a telephone number. Los Angeles Police Undercover Officer Larry Shelley went to petitioner's shop on December 19, 1974. He observed many candles, potions, and herbs for sale, and a sign stating, "tarot card readings, $10.00 a half hour." He asked petitioner to explain what a tarot card reading was, and she replied that it was a spiritual reading in which she could guarantee three months' prediction of the future to him. She gave him a business card and brochure. He made an appointment for a reading but did not keep it.

Undercover Officer Rosalie Kimberlin telephoned petitioner and made an appointment for a tarot card reading. She went to petitioner's shop on

---

[1] Los Angeles Municipal Code section 43.30 provides:
"No person shall advertise by sign, circular, handbill or in any newspaper, periodical or magazine, or other publication or publications, or by any other means, to tell fortunes, to find or restore lost or stolen property, to locate oil wells, gold or silver or other ore or metal or natural product; to restore lost love or friendship or affection, to unite or procure lovers, husbands, wives, lost relatives or friends, for or without pay, by means of occult or psychic powers, faculties or forces, clairvoyance, psychology, psychometry, spirits, mediumship, seership, prophecy, astrology, palmistry, necromancy, or other craft, science, cards, talismans, charms, potions, magnetism or magnetized articles or substances, oriental mysteries or magic of any kind or nature, or numerology, or to engage in or carry on any business the advertisement of which is prohibited by this section."
Los Angeles Municipal Code section 43.31 provides an exemption as follows: "The provisions of the preceding section shall not be construed to include, prohibit or interfere with the exercise of any religious or spiritual function of any priest, minister, rector or an accredited representative of any bona fide church or religion where such priest, minister, rector or accredited representative holds a certificate of credit, commission or ordination under the eccelsiastical laws of a religious corporation incorporated under the laws of any state or territory of the United States of America or any voluntary religious association, and who fully conforms to the rites and practices prescribed by the supreme conference, convocation, convention, assembly, association or synod of the system or faith with which they are affiliated. Provided, however, that any church or religious organization which is organized for the primary purpose of conferring certificates of commission, credit or ordination for a price and not primarily for the purpose of teaching and practicing a religious doctrine or belief, shall not be deemed to be a bona fide church or religious organization."

February 10, 1975. On the shelves inside the shop were various books, candles, bones, leaves, incense, and liquids. Near the counter and a cash register was a sign reading, "tarot card readings, $10.00."

Petitioner and Officer Kimberlin sat down at a table. After shuffling a deck of tarot cards, petitioner told Officer Kimberlin to draw eight cards and ask petitioner three questions. Officer Kimberlin asked if she should move out of the state, and she drew eight cards. Petitioner said the cards showed that Officer Kimberlin would move, would get a divorce, and that her husband would slander her. The cards were reshuffled and Officer Kimberlin asked her second question, whether her daughter would be able to attend veterinary school. After Officer Kimberlin drew the cards, petitioner stated that they showed the daughter would not attend veterinary school but that later something would work out. For her third question, Officer Kimberlin asked whether her mother would leave the state with her. After Officer Kimberlin drew the cards, petitioner stated that her mother would not leave with her. Petitioner then gave Officer Kimberlin a potion which she said would make other people bend her way. She told Officer Kimberlin to wave it in front of her husband, and this would make things go more smoothly. Officer Kimberlin asked how much the reading was, and petitioner said it was $10. Officer Kimberlin put $10 on the table and left.

After receiving this information from Officer Kimberlin, Officer Shelley went into the shop and arrested petitioner. Petitioner stated, "I'm glad you're arresting me. You're going to make me famous and rich."

Petitioner's defense was that she is a high priestess of Wicca. According to the defense testimony, Wicca, commonly known as witchcraft, is a religion marked by belief in a feminine deity. One of the beliefs of this religion is that the goddess bestows upon certain persons supernatural abilities such as controlling the weather, healing the sick, finding lost articles, divination and prophecy. Petitioner believes that the goddess has bestowed upon her the gift of the secret of the cards, which permits her to tell the past, present, and probable future.

On the question of the payment of fees for reading the cards, petitioner's expert, a priestess of Wicca and director of a national pagan organization called Nemeton, testified that being paid for this service is not a tenet of the religion. It is neither required nor prohibited, and is up to the individual. The religion does prohibit initiating a new member or

teaching for money. An anthropologist testified for defendant that it is pretty much universal for money to change hands, that a witch is a professional entitled to compensation for her services. Petitioner testified that her religion prohibited her from refusing a request for a consultation. She would read for someone who could not afford to pay. However, ordinarily there is some exchange. "I have read for 75 cents. I have read for a single rose. I read for nothing. And I've read for a kiss."

A jury found petitioner guilty of violating the ordinance.

## DISCUSSION

Petitioner contends that the ordinance (1) is unconstitutionally vague and overbroad; (2) unconstitutionally interferes with the practice of her religion; (3) unconstitutionally restricts her freedom of speech; and (4) is preempted by state law. None of these contentions has merit.

This ordinance has been authoritatively construed and found constitutional in *Allinger* v. *City of Los Angeles,* 272 Cal.App.2d 391 [77 Cal.Rptr. 257], and *Gladstone* v. *Galton* (9th Cir. 1944) 145 F.2d 742; see also *In re Apgar,* 66 Cal.App.2d 70 [151 P.2d 889]. The constitutionality of similar ordinances is well established throughout the United States. (*White* v. *Adams* (1961) 233 Ark. 241 [343 S.W.2d 793, 794]; *Williams* v. *Jenkins* (1954) 211 Ga. 10 [83 S.E.2d 614, 616]; *Mitchell* v. *City of Birmingham* (1931) 222 Ala. 389 [133 So. 13, 14]; *Davis* v. *State* (1928) 118 Ohio St. 25 [26 Ohio L.R. 45, 160 N.E. 473, 474-475]; *State* v. *Neitzel* (1912) 69 Wash. 567 [125 P. 939, 940]; *Turner* v. *Kansas City* (1945) 354 Mo. 857 [191 S.W.2d 612, 617]; *McMasters* v. *State* (1922) 21 Okla. Crim. 318 [207 P. 566, 569, 29 A.L.R. 292, 295]; Anno. 14 A.L.R. 1489.)

In *Allinger* and *Gladstone,* section 43.30 read in light of section 43.31, was construed as follows: The ordinance prohibits engaging in the business of fortunetelling. (*Gladstone* v. *Galton, supra,* at p. 745.) "[I]t is incumbent upon the City to show that a fee, a consideration, or a sum of money or something of value must be agreed upon in exchange for the prophecy or the service of a prophecy as distinguished from a gift or donation before appellant can come within this section. In other words, a commercial transaction is contemplated and required." (*Allinger* v. *City of Los Angeles, supra,* at pp. 395-396.) Even a minister may not *engage in the business of* fortunetelling under the guise of religion. (*Gladstone* v. *Galton, supra,* 145 F.2d at p. 745; *Allinger* v. *City of Los Angeles, supra,* at p. 395.)

These distinctions were correctly noted and applied throughout the trial.[2] It was made clear to the jury that if petitioner engaged in the business of fortunetelling it was a violation of the ordinance, but that if she engaged in fortunetelling only as a part of her religion and not as a business, she was to be found not guilty.

■ The conflict in the evidence as to whether petitioner engaged in fortunetelling as a business or as a part of her religion raised a factual question for the jury to resolve. (*In re Apgar, supra,* 66 Cal.App.2d 70, 74.) There is ample evidence to support the jury's determination that petitioner was engaged in the business of fortunetelling: Petitioner advertised in the local newspaper and with business cards; the reading took place in a commercial shop where numerous curios were on sale; there was a sign over the cash register stating, "tarot card readings, $10.00"; petitioner told Officer Kimberlin that the reading was $10; and, when arrested, petitioner stated: "I'm glad you're arresting me. You're going to make me famous and rich."

■ The contention that the ordinance as construed interferes with petitioner's exercise of religion is wholly without merit. Petitioner's religion did not require her to do fortunetelling as a business. The question of fees was not a tenet of the religion. The practice of the religion itself is not prohibited by the ordinance. Petitioner's argument is the same one rejected in *Allinger* v. *City of Los Angeles, supra,* at pages 395-397.

Petitioner's reliance on cases dealing with the distribution of religious literature by Jehovah's Witnesses is misplaced. (*Follett* v. *McCormick* (1944) 321 U.S. 573, 576-577 [88 L.Ed. 938, 940-941, 64 S.Ct. 717, 152 A.L.R. 317]; *Murdock* v. *Pennsylvania* (1943) 319 U.S. 105, 108-112 [87 L.Ed. 1292, 1295-1298, 63 S.Ct. 870, 146 A.L.R. 81]; *Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 307 [84 L.Ed. 1213, 1219-1220, 60 S.Ct. 900, 128 A.L.R. 1352].) These cases involved the alleged sale of religious literature. Here there was nothing religious about petitioner's predictions that Officer Kimberlin would leave the state and get a divorce, that her daughter would not attend veterinary school, and that her mother would not leave with her. (*McMasters* v. *State, supra,* 207 P. 566, 569.)

---

[2]As amended, the complaint charged that petitioner "Did willfully and unlawfully, in the City of Los Angeles, engage in the business of and advertise in a newspaper the telling of fortunes, the restoration of friendship and affection of husbands and friends by means of cards and potions."

■  Petitioner argues that the ordinance is unconstitutionally vague and overbroad, and that it could be construed to prohibit legitimate businesses, such as weather forecasting. Petitioner's argument is not only unconvincing on its merits, but is also irrelevant to her own case. (*Turner v. Kansas City, supra,* 191 S.W.2d 612, 617.) The ordinance unambiguously prohibits the business of fortunetelling by the means specified.

The constitutional right to freedom of speech does not prevent the Legislature from regulating or prohibiting commercial enterprises which are harmful to the public welfare. (*In re Porterfield,* 28 Cal.2d 91, 101 [168 P.2d 706, 167 A.L.R. 675]; *Wirta* v. *Alameda-Contra Costa Transit Dist.,* 68 Cal.2d 51, 57 [64 Cal.Rptr. 430, 434 P.2d 982]; *National Delivery Systems, Inc.* v. *City of Inglewood,* 43 Cal.App.3d 573, 576-577 [117 Cal.Rptr. 791].) The ordinance need not necessarily be limited to cases involving an actual intent to defraud. It is within the police power of the municipality and province of the legislative body to determine that the business of fortunetelling is inherently deceptive and that its regulation or prohibition is required in order to protect the gullible, superstitious, and unwary. (*Williams* v. *Jenkins, supra,* 83 S.E.2d 614, 616; *White* v. *Adams, supra,* 343 S.W.2d 793, 794; *Mitchell* v. *City of Birmingham, supra,* 133 So. 13, 14; *Davis* v. *State, supra,* 160 N.E. 473, 474-475; *Bridewell* v. *City of Bessemer* (1950) 35 Ala.App. 337 [46 So.2d 568, 570].)

■  Finally, petitioner contends that the ordinance is invalid because the state has preempted the field. Petitioner argues that Penal Code section 332 is applicable and requires fraudulent intent. Penal Code section 332 provides as follows: "Every person who by the game of 'three-card monte,' so-called, or any other game, device, sleight-of-hand, pretensions to fortune-telling, trick, or other means whatever, by use of cards or other implements or instruments, or while betting on sides or hands of any such play or game, fraudulently obtains from another person money or property of any description, shall be punished as in case of larceny of property of like value."[3]

This argument is also without merit. The fact that the state prohibits fraudulent fortunetelling along with other fraudulent gaming devices is not persuasive that the state intended to occupy the field and to prevent municipalities from prohibiting the practice altogether. (See *In re Hubbard,* 62 Cal.2d 119, 127 [41 Cal.Rptr. 393, 396 P.2d 809]; *Eckl* v.

---

[3]Petitioner was originally charged with a second count, violation of Penal Code section 332. That count was dismissed on the People's motion prior to trial.

*Davis,* 51 Cal.App.3d 831, 834 [124 Cal.Rptr. 685]; see also *Mitchell* v. *City of Birmingham, supra,* 133 So. 13, 15-16 (state law providing that fortunetellers pay a license fee did not preempt municipality from exercising its police power to prohibit the business within the municipality).)

The petition for writ of habeas corpus is denied.

Kaus, P. J., and Stephens, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 3, 1977.