TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 92-518 |
| of | : | |
| | : | OCTOBER 8, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE MARIAN BERGESON, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

With respect to a public school building designated as a polling place by the county clerk, may a school district board prohibit election campaigning on election day by members of the public on the school's property beyond 100 feet of the polling place?

CONCLUSION

With respect to a public school building designated as a polling place by the county clerk, a school district board may prohibit election campaigning on election day by members of the public on the school's property beyond 100 feet of the polling place except for an area constituting a public forum under the Civic Center Act. The board may subject the latter area to reasonable time, place, and manner restrictions to protect the school's educational programs.

ANALYSIS

Elections Code section 1504 provides that when "a city or county clerk specifically requests the use of a school building for polling places on an election day, the governing body having jurisdiction over the particular school building shall allow its use for the purpose requested." Elections Code section 29470 prohibits electioneering or the solicitation of votes on election day within 100 feet of any polling place. It states:

"No person, on election day, shall, within 100 feet of a polling place:

"(a)    Circulate an initiative, referendum, recall, or nomination petition or any other petition.

"(b)    Solicit a vote or speak to a voter on the subject of marking his ballot.

"(c)     Place a sign relating to voters' qualifications or speak to a voter on the subject of his qualifications except as provided in Section 14216.

"(d)     Do any electioneering.

"As used in this section `100 feet of a polling place' shall mean a distance 100 feet from the room or rooms in which voters are signing the roster and casting ballots.

"Any person who violates any of the provisions of this section is guilty of a misdemeanor." [1]

We are asked herein to determine whether a school district board may extend the 100 feet limitation of Elections Code section 29470 to all of the school's property so as to prevent election campaigning by members of the public on election day. We conclude that it generally may.

Education Code section 7055 [2] provides:

"The governing body of each local agency may establish rules and regulations on the following:

"(a)     Officers and employees engaging in political activity during working hours.

"(b)     Political activities on the premises of the local agency."

In analyzing the scope of section 7055 in light of other relevant authorities, we will proceed with various assumptions in mind. First, the election campaigning is restricted to members of the general public. Accordingly, we need not address the scope of the constitutional freedom of expression held by students or school personnel. (Compare *Tinker* v. *Des Moines Independent Community School Dist.* (1969) 393 U.S. 503 [school authorities may not prohibit a student from wearing a black armband to protest war] with *Hazelwood School District* v. *Kuhlmeier* (1987) 484 U.S. 260 [school authorities may excise articles from a school newspaper which they reasonably conclude are not suitable for such publication].) Nor need we direct our analysis to the Federal Equal Access Act (20 U.S.C. §§ 4071-4074) which prohibits a school receiving federal funds from denying equal access to student organizations meeting on campus for purposes not directly related to the school's curriculum.[3]

---

[1] A similar 100 feet limitation was recently held to be constitutional in *Burson v. Freeman* (1992) 504 U.S.__ [119 L.Ed.2d 5].

[2] All references hereafter to the Education Code are by section number only.

[3] This federal legislation provides in part:

"It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings." (20 U.S.C. §4071(a).)

Second, although section 7055 is placed in the article of the Education Code entitled "Political Activities of School Officers and Employees," its wording is sufficient to encompass *any* political activities on school property. Third, section 29470 of the Elections Code is solely a prohibition. It is not an affirmative authorization to perform the prohibited acts outside the 100 feet perimeter. In short, the statute is silent concerning what is to occur beyond 100 feet of a polling place and thus is not in conflict with section 7055 or any other provision of law. (See *In re Iverson* (1926) 199 Cal. 582, 586-587.) Fourth, other statutory laws (e.g., trespass laws applicable to school property) are subject to the exercise of a person's constitutional rights, including that of free speech, on school property. (See Cal. Const., art. 1, § 28, subd. (c); §§ 32210, 32211, 44811; Pen. Code, §§ 626-626.10, 627.2, 653g.)

With these preliminary considerations in mind, we examine the question presented in the context of the constitutional right of freedom of expression. The First Amendment of the United States Constitution provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

Subdivision (a) of section 2 of article I of the California Constitution states:

"Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

California courts have construed the California Constitution as being more protective of First Amendment rights than the federal Constitution. (*Spiritual Psychic Science Church* v. *City of Azusa* (1985) 39 Cal.3d 501, 519; *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 903, 907-910; *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658; *Women's Internat. League Etc. Freedom* v. *City of Fresno* (1986) 186 Cal.App.3d 30, 37-38.)

1. Federal Constitutional Considerations

The basic issue for resolution herein is what rights the public may have to exercise political speech on a specific type of public property, that is, school property. In *Perry Ed. Assn.* v. *Perry Local Educator's Assn.* (1983) 460 U.S. 37, 45-46, the United States Supreme Court set forth the following rules regarding the right of free speech on public property:

"In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which `have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' [Citation.] In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its interest is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. [Citation.] The State may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. [Citations.]

"A second category consists of public property which the State has opened for use by the public as a place for expressive activity. The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. [Citations.] Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place, and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest. [Citation.]

"Public property which is not by tradition or designation a forum for public communication is governed by different standards. We have recognized that the `First Amendment does not guarantee access to property simply because it is owned or controlled by the government.' [Citation.] In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. [Citation.] As we have stated on several occasions, `"[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use of which it is lawfully dedicated."' [Citations.]"

As to public school property specifically, the United States Supreme Court set forth the following guidelines in *Hazelwood School District v. Kuhlmeier, supra*, 484 U.S. at 267:

". . . The public schools do not possess all of the attributes of streets, parks, and other traditional public forums that `time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' [Citations.] Hence, school facilities may be deemed to be public forums only if school authorities have `by policy or by practice' opened those facilities `for indiscriminate use by the general public,' [citation] or by some segment of the public, such as student organizations. [Citation.] If the facilities have instead been reserved for other intended purposes, `communicative or otherwise,' then no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community. [Citation.] `The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse.' [Citation.]"

In California, public school property may be placed under *Perry's* third category, except for a public forum area designated at each school which is subject to *Perry's* second category limitations as express in *Hazelwood*. The Civic Center Act (§§ 40040-40048) requires school

district boards to make available a "civic center" at each school for use by any group for virtually any legitimate purpose, including "political" activities. Section 40041 provides:

"(a) There is a civic center at each and every public school facility and grounds within the state where the citizens, parent-teachers' associations, camp fire girls, boy scout troops, farmers' organizations, school-community advisory councils, senior citizens' organizations, clubs, and associations formed for recreational, educational, political, economic, artistic, or moral activities of the public school districts may engage in supervised recreational activities, and where they may meet and discuss, from time to time, as they may desire, any subjects and questions which in their judgment pertain to the educational, political, economic, artistic, and moral interests of the citizens of the communities in which they reside.

"(b) The government board of any school district may grant the use of school facilities or grounds as a civic center upon the terms and conditions the board deems proper, subject to the limitations, requirements, and restrictions set forth in this article . . . ."

While a school district board must designate a civic center area at each school (*Danskin v. San Diego Unified Sch. Dist.* (1946) 28 Cal.2d, 536, 540; *Goodman v. Board of Education* (1941) 48 Cal.App.2d 731, 734-738), the public use of such an area may "not interfere with the school program" (*American Civil Liberties Union v. Board of Education* (1963) 59 Cal.App.2d 203, 208; 52 Ops.Cal.Atty.Gen. 220, 222 (1969)). As explained by the Supreme Court in *Danskin v. San Diego Unified Sch. Dist., supra,* 28 Cal.2d at 550:

"The state can of course safeguard the primary purposes of public property from interference by other uses that it permits. Under the Civic Center Act `the educational activities of schools shall at all times take precedence over other permissive but secondary uses of school buildings' and a school board must `consider the probable effect of the proposed use on the regular school program and must deny one that would lead to an interference with that program.' (*Payroll Guaranty Association v. Board of Education,* 27 Cal.2d 197, 203.) . . . ."

Under the federal Constitution, then, with respect to the area of a school's property designated as a public forum under the Civic Center Act, the school board may only "enforce regulations of the time, place and manner of expression which are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." (*Perry Ed. Assn. v. Perry Local Educator's Assn., supra*, 460 U.S. 37, 45.)[4] The "significant government interest" here would be the protection of the school's educational programs. The "non-forum" remainder of the school's property beyond the 100 feet perimeter of Elections Code section 29470 would be subject to a total ban on election campaigning.

---

[4] In so concluding, we realize that the Legislature has authorized members of the public other than those voting to be present at a polling place to challenge voters (Elec. Code, § 14216) and to examine the duplicate voters list which must be checked off periodically by precinct workers (Elec. Code, §§ 14251, 14252). However, in our view, these statutory provisions relate to election procedures, not expressive activity.

2. California Constitutional Considerations

As noted at the outset, California courts have construed the California Constitution as being more protective of a person's right of expression than the federal Constitution. An examination of recent California cases, however, discloses that California courts have adopted the general "public forum" concepts enunciated in *Perry* as an analytical framework. (See *Sands* v. *Morongo Unified School Dist.* (1991) 53 Cal.3d 863, 912, fn. 4; *Chino Feminist Women's Health Center* v. *Scully* (1989) 208 Cal.App.3d 230, 243-248.)

Accordingly, the analysis and result should be the same under both the United States and California Constitutions. In short, school boards retain the discretion under the Civic Center Act to utilize school buildings and property for their intended purpose, that is, education. A school board may adopt reasonable time, place, and manner restrictions upon any public forum area to prevent interference with this primary purpose. As for the "non-forum" remainder of a school's property beyond 100 feet of the polling place, the board may prohibit all election campaigning by members of the public.

In answer to the question presented, therefore, we conclude that with respect to a public school building designated as a polling place by the county clerk, the school district board may prohibit election campaigning on election day by members of the public on all of the school's property beyond 100 feet of the polling place except for an area constituting a public forum under the Civic Center Act. The board may subject the latter area to reasonable time, place, and manner restrictions to protect the school's educational programs.

* * * * *