[No. S164272. Mar. 25, 2010.]

INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF
CALIFORNIA, INC., et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

Rockard J. Delgadillo and Carmen A. Trutanich, City Attorneys, Kelly Martin, Managing City Attorney, D. Timothy Dazé, Deputy City Attorney; Law Offices of John Werlich and John M. Werlich for Defendants and Appellants.

Dennis J. Herrera, City Attorney (San Francisco), Danny Chou, Chief of Complex and Special Litigation, Mara Rosales, Chief Airport Counsel, Burk E. Delventhal, Ellen Forman and Rafal Ofierski, Deputy City Attorneys; Patricia B. Heilbron, Deputy Port Attorney (Oakland); and Breton Lobner for City and County of San Francisco, League of California Cities, California State Association of Counties, Port of Oakland and San Diego County Regional Airport Authority as Amici Curiae on behalf of Defendants and Appellants.

Kent S. Scheidegger and Maritza B. Meskan for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Defendants and Appellants.

Law Offices of David M. Liberman, David M. Liberman; Law Offices of Robert C. Moest and Robert C. Moest for Plaintiffs and Respondents.

Peter J. Eliasberg; Julia Harumi Mass, Alan L. Schlosser; and David Blair-Loy for American Civil Liberties Union of Southern California, American Civil Liberties Union of Northern California and American Civil Liberties Union of San Diego and Imperial Counties as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**MORENO, J.**—In 1997, the City of Los Angeles enacted an ordinance prohibiting persons from soliciting funds at Los Angeles International Airport. The International Society for Krishna Consciousness of California, Inc., sought an injunction in federal district court, which ruled that the ordinance violated the free speech clause of the California Constitution. The city appealed and, following protracted litigation, the Ninth Circuit Court of

Appeals requested that this court decide the following question: "Is Los Angeles International Airport a public forum under the Liberty of Speech Clause of the California Constitution?" California Rules of Court, rule 8.548 provides that this court may decide a question of California law upon which there is no controlling precedent at the request of a federal court of appeals if "[t]he decision could determine the outcome of a matter pending in the requesting court . . . ."

■ We granted the Ninth Circuit's request and directed the parties to address the following questions: "1) Is Los Angeles International Airport a public forum under the Liberty of Speech Clause of the California Constitution? 2) If so, does the ordinance at issue violate the California Constitution?" For the reasons that follow, we conclude that whether or not Los Angeles International Airport is a public forum for free expression under the California Constitution, the ordinance is valid as a reasonable time, place, and manner restriction of expressive rights to the extent that it prohibits soliciting the immediate receipt of funds. Accordingly, we do not determine whether Los Angeles International Airport is a public forum under the liberty of speech clause of the California Constitution, because the resolution of that question could not determine the outcome of the present matter.

## FACTS[1]

Former section 23.27(c) of the Los Angeles Administrative Code (hereafter section 23.27(c)), which became effective on May 15, 1997, provided that "[n]o person shall solicit and receive funds" "in a continuous or repetitive manner" "inside the airport terminals" at Los Angeles International Airport (LAX), "in the parking areas at the Airport," or "on the sidewalks adjacent to the airport terminals or the sidewalks adjacent to the parking areas at the Airport."[2] (*Intern. Soc. for Krishna v. City of Los Angeles* (9th Cir. 2008) 530 F.3d 768, 770.)

---

[1] These facts are based on the record provided to this court which, in minor respects, varies from some published sources.

[2] Section 23.27(c) provided, in relevant part: "(c)(1) No person shall solicit and receive funds inside the airport terminals at the Airport. [¶] (2) No person shall solicit and receive funds in the parking areas at the Airport. [¶] (3) No person shall solicit and receive funds on the sidewalks adjacent to the airport terminals or the sidewalks adjacent to the parking areas at the Airport. [¶] (4) Subdivisions (c)(1), (c)(2), and (c)(3) apply only if the solicitation and receipt of funds is conducted by a person to or with passers-by in a continuous or repetitive manner. Nothing herein is intended to prohibit the distribution of flyers, brochures, pamphlets, books, or any other printed or written matter as long as such distribution is not made with the intent of immediately receiving funds, as defined in Subdivision (c)(5), at the locations referred to in (c)(1), (c)(2), or (c)(3). [¶] (5) 'Solicit and receive funds' means any written or oral request for [¶] (A) the donation of money, alms, property or anything else of value, or, [¶]

LAX occupies 3,550 acres of land, approximately 93 acres of which is occupied by nine passenger terminals that include 195,000 square feet of space for concession and retail establishments for the benefit of travelers and their guests. In 2005, LAX served nearly 60 million passengers, making it one of the largest airports in the world. "The upper level of the airport contains commercial concessions and amenities, including four duty free shops, five fast food restaurants, five full service restaurants, 18 gift shops/newsstands, 19 cocktail lounges, five cafeterias, eight snack bars, three coffee shops, two food courts, six business centers, two bookstores, three postal facilities, and four specialty stores. [¶] At LAX, there are areas open to the public where people may come and go freely and engage in a variety of activities for which facilities are provided, including those mentioned above."

On May 13, 1997, the International Society for Krishna Consciousness of California, Inc., and others (hereafter ISKCON) filed a complaint for declaratory and injunctive relief against the City of Los Angeles and others (hereafter City) in the United States District Court for the Central District of California, alleging that section 23.27(c) violates article I, section 2 of the California Constitution and the First Amendment of the United States Constitution. ISKCON practices the Krishna consciousness religion, a basic tenet of which involves an evangelical activity known as *sankirtan*, which requires members of ISKCON to approach people in public places in order to proselytize, solicit donations, sell and distribute literature, and disseminate information about Krishna consciousness programs and activities. *Sankirtan* has four purposes: to spread religious truth; to proselytize and attract new members; to distribute Krishna consciousness literature; and to generate funds.

On June 6, 1997, the district court issued a preliminary injunction enjoining the City from enforcing section 23.27(c) against ISKCON. On May 27, 1998, the district court granted summary judgment in favor of ISKCON, declaring section 23.27(c) unconstitutional and permanently enjoining the City from enforcing the ordinance. The district court held "that solicitation is not basically incompatible with the normal activity of the airport or the primary use of the airport, to facilitate air travel. Any difficulties caused by solicitation can be addressed by the use of less restrictive measures." The court found "that 'the Ordinance is inconsistent with the Liberty of Speech Clause of the California Constitution' and that the airport is a public forum in relation to solicitation." The district court further held that section 23.27(c)

---

(B) the pledge of a future donation of money, alms, property, or anything else of value, or, [¶] (C) the sale or offering for sale of any property upon the representation, express or implied, that the proceeds of such sale will be used for a charitable or religious purpose."

Effective June 19, 2000, section 23.27 was deleted and transferred without change to section 171.02 of the Los Angeles Municipal Code. As do the parties and the federal courts, we will continue to refer to the ordinance as section 23.27(c).

was a prohibited content-based regulation of speech because it "regulates solicitation but not other equivalent forms of speech." The court noted, however, that "the California Supreme Court has never addressed whether regulation directed solely at solicitation of money violates the California Liberty of Speech Clause . . . ." The City appealed on June 26, 1998.

While the appeal was pending, this court issued its decision in *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352, 357 [93 Cal.Rptr.2d 1, 993 P.2d 334], which held that an ordinance "that is directed at activity involving public solicitation for the immediate donation or payment of funds should not be considered content based or constitutionally suspect under the California Constitution, and should be evaluated under the intermediate scrutiny standard applicable to time, place, and manner regulations, rather than under the strict scrutiny standard." The Ninth Circuit vacated the summary judgment and remanded this case back to the district court for reconsideration in light of this decision.

On August 2, 2001, the district court again granted summary judgment in favor of ISKCON on the grounds that LAX was a public forum under California law and section 23.27(c) was not a reasonable time, place, and manner restriction of the solicitation of funds at LAX. The court stated: "The Ordinance, in the present case, bans all solicitation for the immediate receipt of funds in the LAX terminals, parking lots and adjacent sidewalks. . . . [T]he court finds that the Ordinance constitutes a content-neutral restriction on expressive activity." The court further found, however, "that LAX is a public forum for purposes of California's Liberty of Speech clause," and "[t]he Ordinance does not constitute a reasonable restriction on the time, place and manner of solicitation activities," in part because the ordinance's "ban on all solicitation for the immediate receipt of funds at all times—not just during peak hours or in overcrowded locations—places a substantial burden on several forms of lawful solicitation, such as solicitation of immediate donations for lawful charitable, religious, political and protest activities." The City again appealed, two weeks before the terrorist attacks on September 11, 2001. (*Intern. Soc. for Krishna v. City of Los Angeles, supra*, 530 F.3d at p. 771.)

While the present appeal was pending, the City enacted section 171.07 of the Los Angeles Municipal Code, which became effective on December 16, 2002, and permits organizations to apply for a permit to "solicit and receive funds" in designated locations at LAX. This ordinance provides that: " 'Solicit and receive funds' shall mean any oral or written request for funds conducted by a person to or with passers-by in a continuous and repetitive manner where funds are immediately received." (*Ibid.*) This ordinance states that its provisions are "temporary and provisional pending the outcome" of the present litigation. (*Id.*, § 171.07(G)(1), quoted in *Intern. Soc. for Krishna v.*

*City of Los Angeles, supra*, 530 F.3d at p. 772.) ISKCON filed a suit challenging this new ordinance on January 13, 2003. (C.D.Cal. No. CV 03-00293.)

On March 21, 2003, the Ninth Circuit announced in the present appeal that it intended to ask this court to decide " '[w]hether the Liberty of Speech Clause of the California Constitution should be interpreted more expansively than the federal First Amendment,' " but first remanded the present case to the district court "for the limited purpose of allowing the parties to supplement the record with post-9/11 evidence that would aid the California Supreme Court in its deliberations." (*Intern. Soc. for Krishna v. City of Los Angeles, supra*, 530 F.3d at p. 772, italics omitted.) The parties informally agreed that the discovery then being conducted in the related case challenging section 171.07 of the Los Angeles Municipal Code (C.D.Cal. No. CV 03-00293) would be used in the present appeal as well.

Ultimately, the parties stipulated that 62 documents filed in the related case be deemed to have been filed in the present appeal. These documents establish the following. The nine passenger terminals in LAX are located on the outside ring of a horseshoe-shaped, double-deck roadway. The upper level roadway serves the departure areas, and the lower level roadway serves the arrival areas. Sidewalks run the length of both the departure and arrival areas and total 154,604 square feet. The City does not regulate religious or charitable solicitation on the sidewalks and does not prohibit persons in the publicly accessible areas of the terminals from distributing literature and speaking with members of the traveling public about their views and beliefs.

Following the September 11, 2001 terrorist attacks, the departure areas of the passenger terminals at LAX were separated into prescreening areas that are open to the public, and postscreening areas to which only ticketed passengers are admitted. Consumer amenities such as stores and restaurants in most of the terminal buildings are located in the postscreening areas to which only ticketed passengers are admitted, but there are exceptions. In the international terminal, most of the retail amenities and concessions, including a food court, are located in the prescreening area that is open to the general public. Commercial amenities and facilities are also located in areas open to the general public in three other terminals. The prescreening area has become more congested due to the presence of explosive detection system (EDS) and explosive trace device (ETD) equipment that is used to scan each piece of baggage. Approximately 211,000 square feet of the area of the terminals is open to the general public and the City has allocated approximately 670 square feet for solicitation activities.

On September 18, 2006, in the related case (C.D.Cal. No. CV 03-00293), the district court, having declined to exercise supplemental jurisdiction over

ISKCON's state law claim, granted summary judgment in favor of the City, ruling that section 171.07 of the Los Angeles Municipal Code did not violate the First Amendment of the United States Constitution. ISKCON appealed on November 16, 2006.

On June 9, 2008, the Ninth Circuit issued an order in the present appeal requesting that this court decide the following question: "Is Los Angeles International Airport a public forum under the Liberty of Speech Clause of the California Constitution?" (*Intern. Soc. for Krishna v. City of Los Angeles, supra,* 530 F.3d at p. 770.)[3] The court added: "Our phrasing of the question should not restrict the California Supreme Court's consideration of the issues involved." (530 F.3d at p. 770.) The Ninth Circuit stated that the "answer will be determinative of the appeal presently before us." (*Id.* at p. 769.)

On August 13, 2008, this court granted the request and directed the parties to address the following questions: "1) Is Los Angeles International Airport a public forum under the Liberty of Speech Clause of the California Constitution? 2) If so, does the ordinance at issue violate the California Constitution?"[4]

## DISCUSSION

■ "The constitutional right of free expression is an essential ingredient of our democratic society. 'It is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect polity and in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests.' [Citations.] The airing of opposing views is fundamental to an informed electorate and, through it, a free society." (*Spiritual Psychic Science Church v. City of Azusa* (1985) 39 Cal.3d 501, 511 [217 Cal.Rptr. 225, 703 P.2d 1119], disapproved on another ground in *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 968 [119 Cal.Rptr.2d 296, 45 P.3d 243].)

■ It is well established that public areas such as streets and parks are public forums for free expression. As the high court has stated: "Wherever

---

[3] California Rules of Court, rule 8.548(a) states: "On request of the United States Supreme Court, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth, the Supreme Court may decide a question of California law if: [¶] (1) The decision could determine the outcome of a matter pending in the requesting court; and [¶] (2) There is no controlling precedent."

[4] California Rules of Court, rule 8.548(f)(5) states: "At any time, the Supreme Court may restate the question . . . ."

the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied." (*Hague v. C. I. O.* (1939) 307 U.S. 496, 515–516 [83 L.Ed. 1423, 59 S.Ct. 954].) Even in a public forum, the right of free speech may be restricted by reasonable restrictions on its time, place, or manner. (*Ward v. Rock Against Racism* (1989) 491 U.S. 781, 791 [105 L.Ed.2d 661, 109 S.Ct. 2746].)

■ The Ninth Circuit asked this court to determine whether LAX is a public forum under the liberty of speech clause of the California Constitution. But our court rules provide that we should resolve such an issue only if "[t]he decision could determine the outcome of a matter pending in the requesting court . . . ." (Cal. Rules of Court, rule 8.548(a)(1).) Declaring whether LAX is a public forum would not determine the outcome of the present case, because the ordinance is a valid time, place, and manner restriction of free expression even if LAX is a public forum.[5]

■ Section 23.27(c) prohibits only solicitation of the immediate receipt of funds and permits other forms of free expression, including soliciting future donations.[6] "Many forms of solicitation are constitutionally protected." (*People v. Fogelson* (1978) 21 Cal.3d 158, 165 [145 Cal.Rptr. 542, 577 P.2d 677].) In *Fogelson*, we held unconstitutional on its face an ordinance enacted

---

[5] In reviewing the validity of a restriction on free expression on public property, there is no need to wrestle with the sometimes difficult question of whether the public property constitutes a public forum if the regulation qualifies as a reasonable time, place, and manner restriction. If so, the regulation is valid whether or not the area constitutes a public forum.

[6] The district court stated that section 23.27(c) "prohibits any person from soliciting and immediately receiving funds inside the LAX terminals, parking areas and on the sidewalks adjacent to the parking areas or airport terminals." The City agrees with the district court that the ordinance prohibits only soliciting the immediate receipt of funds, stating in its opening brief that "§ 23.27(c) only limits solicitors in one respect: Solicitors may no longer *actually immediately receive funds* in conjunction with their solicitation efforts . . . . They may receive funds . . . in the mail, over the internet, and at other areas of LAX not covered by the ordinance . . . ." The Ninth Circuit's certification order similarly describes the ordinance as prohibiting "any person from soliciting and *immediately* receiving funds." (*Intern. Soc. for Krishna v. City of Los Angeles, supra,* 530 F.3d at p. 770, italics added.) We accept for purposes of our analysis the interpretation of the ordinance urged by the City and adopted by the district court and the Ninth Circuit.

by the City of Los Angeles that made it unlawful to " 'seek, beg, or solicit . . . alms or donations' " on city property without a permit. (*Id.* at p. 161, fn. 1.) We concluded that the ordinance "lends itself to a substantial number of unconstitutional applications" (*id.* at p. 164), noting that it would regulate several forms of protected solicitation including soliciting religious or political contributions (*id.* at pp. 164–165, fn. omitted). But we recognized that "[t]he mere fact that the challenged ordinance attempts to regulate constitutionally protected speech and religious activity does not, of course, render it unconstitutional. Speech and religious exercise are not wholly exempt from controls. [Citation.] The state may, for example, reasonably regulate the time, place and manner of engaging in solicitation in public places. [Citations.]" (*Id.* at p. 165.) The flaw in the ordinance at issue in *Fogelson* was that it granted public officials " 'wide or unbounded discretion in granting or denying permits,' " which permitted the officials to base their decisions " 'on the content of the ideas sought to be expressed.' [Citations.]" (*Id.* at p. 166.) We struck down the ordinance, stating it "contains absolutely no standards to guide licensing officials in exercising their discretion to grant or deny applications to solicit on city property. Thus, the ordinance gives officials unbridled power to prohibit constitutionally protected forms of solicitation." (*Id.* at p. 167, fn. omitted.)

■ In *Los Angeles Alliance for Survival v. City of Los Angeles*, *supra*, 22 Cal.4th 352, 357 (*Los Angeles Alliance*), we upheld an ordinance that banned soliciting an "immediate donation" in certain public places and in all public places if done in an aggressive manner. The ordinance enacted by the City of Los Angeles prohibited "aggressive solicitation" in any public place (*id.* at p. 398) and banned all solicitations in certain locations, such as near banks and automated teller machines, in dining areas of restaurants, or directed at occupied vehicles (*id.* at pp. 399–400). The ordinance limited the term "solicit" to requests for "an immediate donation of money or other thing of value." (*Id.* at p. 399.) We recognized that the ordinance "plainly implicates the liberty of speech clause of the California Constitution," but added that "[t]he circumstance that an ordinance regulates protected conduct does not in itself, however, render the ordinance invalid . . . . California decisions long have recognized that even with regard to protected activity, a regulation may be enforceable if it survives the intermediate scrutiny of time, place, and manner analysis." (*Id.* at p. 364.) The ordinance will survive such intermediate scrutiny if "it is (i) narrowly tailored, (ii) serves a significant government interest, and (iii) leaves open ample alternative avenues of communication. [Citation.]" (*Ibid.*, fn. omitted; see *Ward v. Rock Against Racism*, *supra*, 491 U.S. at p. 791 ["[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant

governmental interest, and that they leave open ample alternative channels for communication of the information.' [Citations.]"].)

■ In order to qualify for intermediate scrutiny, a time, place, and manner regulation of protected speech must be content neutral, in contrast to content-based regulations, which are subjected to strict scrutiny. (*Los Angeles Alliance, supra*, 22 Cal.4th at pp. 364–365.) To be content neutral, a regulation must "be 'justified' by legitimate concerns that are unrelated to any 'disagreement with the message' conveyed by the speech. [Citation.]" (*Id.* at p. 368; see *Ward v. Rock Against Racism, supra*, 491 U.S. at p. 791 ["A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."].) Observing that "the regulation of solicitation long has been recognized as being within the government's police power . . . ," we held that "regulations such as the Los Angeles ordinance here at issue, that single out the public solicitation of funds for distinct treatment, should not be viewed as content based or constitutionally suspect for purposes of analysis under article I, section 2(a), of the California Constitution." (*Los Angeles Alliance, supra*, 22 Cal.4th at p. 378.)

Upon reconsideration in light of our decision in *Los Angeles Alliance*, the district court concluded that the ordinance at issue here was content neutral, but did not survive the intermediate scrutiny described in our decision in *Los Angeles Alliance*, which requires that the regulation be narrowly tailored, serve a significant government interest, and leave open ample alternative avenues of communication. The district court held that section 23.27(c) was not narrowly tailored because the ordinance's "ban on all solicitation for the immediate receipt of funds at all times—not just during peak hours or in overcrowded locations—places a substantial burden on several forms of lawful solicitation, such as solicitation of immediate donations for lawful charitable, religious, political and protest activities." The district court further ruled that the ordinance failed to leave open ample alternate avenues of communication. Although the court acknowledged that the ordinance does not ban all solicitation, including "speaking with travelers about any subject or distributing literature," it left "no ample venue" for ISKCON to "solicit financial support for their charitable, religious or political activities." The district court again granted ISKCON's motion for summary judgment.

■ The district court misapplied our decision in *Los Angeles Alliance* and the concept of narrow tailoring that it incorporates. We relied in *Los Angeles Alliance* on the Court of Appeal's decision in *Savage v. Trammell Crow Co.* (1990) 223 Cal.App.3d 1562, 1571 [273 Cal.Rptr. 302], which held that a ban on distributing religious pamphlets in the parking lot of a shopping center was a valid time, place, and manner regulation. The ban on leafleting was

narrowly drawn because it furthered the shopping center's "interest in controlling litter and traffic." (*Id.* at p. 1574.) The court emphasized that "in determining whether a regulation is narrowly drawn, . . . we must give some deference to the means chosen by responsible decisionmakers. [Citation.]" (*Ibid.*) To be narrowly drawn, a regulation " 'need not be the least-restrictive or least-intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." [Citations.] . . . So long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative. "The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests" or the degree to which those interests should be promoted. [Citations.]' [Citations.]" (*Id.* at pp. 1574–1575; see *Ward v. Rock Against Racism, supra,* 491 U.S. at p. 797 ["[R]estrictions on the time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.' [Citation.]"].)

Section 23.27(c) (as interpreted by the City, the district court, and the Ninth Circuit Court of Appeals) prohibits only soliciting the immediate receipt of funds, and permits other forms of communication, including soliciting funds to be sent at a later time by mail or through a Web site, distributing literature, and speaking with willing listeners. Prohibiting persons from soliciting the immediate receipt of funds at LAX is a narrowly tailored regulation of expressive activity because it is not substantially broader than necessary to addresses the particular problems caused by requests for the immediate receipt of funds. We noted in *Los Angeles Alliance* that the solicitation of the immediate receipt of funds is far more intrusive than other forms of communication, such as distributing literature: " 'The distribution of literature does not require that the recipient stop in order to receive the message the speaker wishes to convey; instead, the recipient is free to read the message at a later time. . . . In contrast, . . . sales and the collection of solicited funds not only require the [person] to stop, but also "engender additional confusion . . . because they involve acts of exchanging articles for money, fumbling for and dropping money, making change, etc." ' [Citation.]" (*Los Angeles Alliance, supra,* 22 Cal.4th at p. 369.) We observed that solicitation that requests the physical exchange of money " 'creates a risk of fraud and duress that is well recognized, and that is different in kind from other forms of expression or conduct. . . . [S]olicitation has been associated with coercive or fraudulent conduct. [Citations.]' " (*Id.* at p. 371.) Finally, we

added: " '[R]equests for immediate payment of money create a strong potential for fraud or undue pressure, in part because of the lack of time for reflection. . . . [Q]uestionable practices associated with solicitation can include the targeting of vulnerable and easily coerced persons, misrepresentation of the solicitor's cause, and outright theft.' " (*Id.* at p. 372.)

Soliciting the immediate receipt of funds at a busy international airport like LAX is particularly problematic. Although portions of the airport are open to the general public, people usually come to the airport only to travel or to accompany a traveler. Travelers often are in a hurry, and the airport often is crowded. The problems posed by solicitations for the immediate receipt of funds that arise in any public place would be exacerbated in the often crowded and hectic environment of a large international airport. As the high court has observed: " 'Solicitation requires action by those who would respond: The individual solicited must decide whether or not to contribute (which itself might involve reading the solicitor's literature or hearing his pitch), and then, having decided to do so, reach for a wallet, search it for money, write a check, or produce a credit card.' [Citations.] Passengers who wish to avoid the solicitor may have to alter their paths, slowing both themselves and those around them. The result is that the normal flow of traffic is impeded. [Citation.] This is especially so in an airport, where '[a]ir travelers, who are often weighted down by cumbersome baggage . . . may be hurrying to catch a plane or to arrange ground transportation.' [Citation.] Delays may be particularly costly in this setting, as a flight missed by only a few minutes can result in hours worth of subsequent inconvenience. [¶] In addition, face-to-face solicitation presents risks of duress that are an appropriate target of regulation. The skillful, and unprincipled, solicitor can target the most vulnerable, including those accompanying children or those suffering physical impairment and who cannot easily avoid the solicitation. [Citation.] The unsavory solicitor can also commit fraud through concealment of his affiliation or through deliberate efforts to shortchange those who agree to purchase. [Citations.] Compounding this problem is the fact that, in an airport, the targets of such activity frequently are on tight schedules. This in turn makes such visitors unlikely to stop and formally complain to airport authorities. As a result, the airport faces considerable difficulty in achieving its legitimate interest in monitoring solicitation activity to assure that travelers are not interfered with unduly." (*International Soc. for Krishna Consciousness, Inc. v. Lee* (1992) 505 U.S. 672, 683–684 [120 L.Ed.2d 541, 112, S.Ct. 2701].)

We do not agree with the district court that the City was required to prohibit such practices only "during peak hours or in overcrowded locations."

Peak periods of congestion and overcrowded locations at LAX vary depending on the arrival and departure schedule of flights. Under these circumstances, generally prohibiting solicitation of the immediate receipts of funds at LAX is narrowly tailored to avoid the particular problems caused by this form of free expression.

As noted above, the district court further ruled that the ordinance failed to leave open ample alternate avenues of communication because it left "no ample venue" for ISKCON to "solicit financial support for their charitable, religious or political activities." Again, we disagree. In *Frisby v. Schultz* (1988) 487 U.S. 474, 483 [101 L.Ed.2d 420, 108 S.Ct. 2495], the high court upheld an ordinance prohibiting picketing in front of a residence, concluding it was "virtually self-evident that ample alternatives remain," including going door-to-door and distributing literature in person or through the mails. In the present case, ISKCON has ample alternative means of conveying its message. It can distribute literature and speak to willing travelers. It can even seek financial support, as long as it does not request the immediate exchange of funds. The City acknowledges that it would be permissible for ISKCON to "ask for donations" and distribute "self-addressed stamped envelope[s]" in the areas of the airport open to the general public.

## CONCLUSION

In response to the Ninth Circuit Court of Appeals' request, we conclude that even if those areas of Los Angeles International Airport that are open to the general public are public forums under the free speech clause of the California Constitution, section 23.27, subdivision (c) of the Los Angeles Administrative Code is valid on its face as a reasonable, content-neutral regulation of the manner of protected speech.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

**KENNARD, J.,** Concurring.—The court's opinion, authored by Justice Moreno, holds that a city ordinance prohibiting the solicitation and receipt of funds in public areas of Los Angeles International Airport does not violate the California Constitution's liberty of speech clause (Cal. Const., art. I, § 2, subd. (a) ["A law may not restrain or abridge liberty of speech or press."]) but instead is a valid time, place, and manner restriction on expressive activity.

I join in that holding, but I do so only under compulsion of this court's decision in *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352 [93 Cal.Rptr.2d 1, 993 P.2d 334]. There, a majority of this court held that under the state Constitution's liberty of speech clause, a city

ordinance prohibiting, at specified locations, any solicitation for the immediate donation of funds was not a content-based regulation of speech and that such an ordinance was to be evaluated as a time, place, and manner restriction on speech. (*Los Angeles Alliance for Survival v. City of Los Angeles, supra,* at p. 357.) I disagreed, concluding that a solicitation ban is based on the content of speech, and therefore its validity must be determined using a standard of scrutiny more rigorous than the standard used to evaluate the validity of time, place, and manner restrictions. (*Id.* at p. 383 (dis. opn. of Kennard, J.).) Although my view on that question has not changed, I recognize that the majority's holding in *Los Angeles Alliance for Survival v. City of Los Angeles* has the force of precedent and that reiteration of dissenting views is rarely justified. (See *People v. Stansbury* (1993) 4 Cal.4th 1017, 1072–1073 [17 Cal.Rptr.2d 174, 846 P.2d 756] (conc. opn. of Kennard, J.).)

In this case, I would also decide an issue that the court's opinion does not address. Although this case comes to this court upon a request of the Ninth Circuit Court of Appeals for a decision on a question of California law, the court's opinion here does not answer the particular question of California law that the Ninth Circuit asked this court to decide. That question is whether Los Angeles International Airport is a public forum for free expression under the California Constitution's liberty of speech clause. More precisely, the question is whether the areas of that airport that are accessible to the general public—excluding the areas reserved for ticketed passengers who have passed through security screening—are public forums. I would answer "yes" to that question.

My answer is based primarily on two of this court's decisions: *In re Hoffman* (1967) 67 Cal.2d 845 [64 Cal.Rptr. 97, 434 P.2d 353], holding that a railway station (Union Station in Los Angeles) was a public forum, and *Fashion Valley Mall, LLC v. National Labor Relations Bd.* (2007) 42 Cal.4th 850 [69 Cal.Rptr.3d 288, 172 P.3d 742], holding that a privately owned shopping mall was a public forum (see also *Robins v. Pruneyard Shopping Center* (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341]).

To determine whether particular areas are public forums for purposes of the California Constitution's liberty of speech clause, this court has generally proceeded by asking whether, in relevant ways, the area in question is similar or dissimilar to areas that have already been determined to be public forums. (See, e.g., *Fashion Valley Mall, LLC v. National Labor Relations Bd., supra,* 42 Cal.4th 850, 858 [stating that an area may be a public forum "if it is open to the public in a manner similar to that of public streets and sidewalks"]; *In re Hoffman, supra,* 67 Cal.2d 845, 851 [comparing railway station with "a public street or park"].) Applying that approach here, I conclude that the

prescreening public areas of Los Angeles International Airport are public forums because, in relevant ways, they are similar to shopping malls and railway stations.

Like railway stations and shopping malls, the prescreening areas of Los Angeles International Airport are open to the public; they contain restaurants, newsstands, shops, and seats or benches for waiting; and they are places where people frequently have leisure for discussion and socializing. Therefore, in answer to the Ninth Circuit's request, I would decide that the prescreening public areas of Los Angeles International Airport are public forums.

In reaching this conclusion, I am aware of the United States Supreme Court's holding that, for purposes of the free speech guarantee of the federal Constitution's First Amendment, airports are not public forums. (*International Soc. for Krishna Consciousness, Inc. v. Lee* (1992) 505 U.S. 672, 680 [120 L.Ed.2d 541, 112 S.Ct. 2701].) But the free speech guarantees of the federal and California Constitutions are not identical, particularly as regards the concept of public forum. Thus, for example, although the federal high court has held that privately owned shopping malls are not public forums for free expression under the First Amendment (*Lloyd Corp. v. Tanner* (1972) 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219]), this court has not found that holding persuasive in interpreting our state Constitution, which is "a document of independent force and effect particularly in the area of individual liberties" (*People v. Hannon* (1977) 19 Cal.3d 588, 606–607, fn. 8 [138 Cal.Rptr. 885, 564 P.2d 1203]). This court has recognized that our state Constitution's free speech guarantee "differs from its counterpart in the federal Constitution both in its language and its scope" (*Fashion Valley Mall, LLC v. National Labor Relations Bd.*, *supra*, 42 Cal.4th at p. 862; see also *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 486 [101 Cal.Rptr.2d 470, 12 P.3d 720]) and that those differences explain the broader application of the public forum concept under our state Constitution (*Fashion Valley Mall, LLC v. National Labor Relations Bd.*, *supra*, at pp. 862–863).

When an area has been determined to be a public forum for purposes of our state Constitution's liberty of speech clause, that determination does not have the effect of prohibiting all regulation of expressive activities at that location. Reasonable time, place, and manner restrictions on expressive activities in public forums are valid, as this court's conclusion here about the validity of the ordinance prohibiting solicitation of funds amply demonstrates. Speech activities at airports that interfere with the legitimate interests of the airport management, arriving or departing passengers, security screeners, or airline or airport employees need not be tolerated.

**CHIN, J.,** Concurring.—I agree with the majority that the challenged ordinance governing the Los Angeles International Airport (LAX) does not violate the California Constitution. But I would answer the question the Ninth Circuit Court of Appeals posed, identify the legal standard applicable to that answer, and apply *that* standard to determine whether the ordinance is valid.

The Ninth Circuit requested this court to answer this question: "Is Los Angeles International Airport a public forum under the Liberty of Speech Clause of the California Constitution?" (See Cal. Const., art. I, § 2, subd. (a).) Consistent with the United States Supreme Court's resolution of the same question under the First Amendment to the United States Constitution, I would answer that LAX is not a public forum for free speech purposes under the California Constitution. (See *International Soc. for Krishna Consciousness, Inc. v. Lee* (1992) 505 U.S. 672 [120 L.Ed.2d 541, 112 S.Ct. 2701] (*Lee*).) This answer does not mean free speech rights do not exist at LAX. It just means that speech at LAX receives a lower level of protection than speech receives at traditional free speech zones such as parks and public squares. LAX is not the same as a park and should not be treated the same as a park.

A. *Whether Los Angeles International Airport Is a Public Forum Under the California Constitution*

The United States Supreme Court developed the public forum doctrine to distinguish between public property subject to the highest free speech protection under the First Amendment and public property subject to a lower level of free speech protection. (See generally *Clark v. Burleigh* (1992) 4 Cal.4th 474, 482–483 [14 Cal.Rptr.2d 455, 841 P.2d 975].) The high court applied that law and concluded that airport terminals (in that case the three major airports in the greater New York City area) are not public forums. (*Lee, supra,* 505 U.S. at pp. 680–683.) I would reach the same conclusion for LAX under the California Constitution.

First, I agree with what is implied in the Ninth Circuit's question and the majority opinion: Public forum analysis applies under the California Constitution as well as under the First Amendment even though the doctrine was developed in First Amendment cases. It is a useful doctrine for deciding what level of protection speech receives in a given context. (See *Clark v. Burleigh, supra,* 4 Cal.4th at pp. 482–483.)

Although this court sometimes interprets the California Constitution differently than the First Amendment, no reason appears to do so here, and good reason exists not to do so. The public, litigators, and government attorneys advising their clients need a clear, consistent "public forum" doctrine in cases

arising on public property, not seemingly random fluctuations between state and federal constitutional law. This is especially true of airports. After the events of September 11, 2001, Congress enacted the Aviation and Transportation Security Act (Pub.L. No. 107-71, 115 Stat. 597), which created the Transportation Security Administration and gave it broad authority to "oversee the implementation, and ensure the adequacy, of security measures at airports" like LAX. (49 U.S.C. § 114(f)(11).) Federal and other authorities overseeing security measures at international airports throughout the country should have one set of constitutional rules to contend with, not multiple sets. Because of the need for interstate and international security cooperation, it benefits no one to have different constitutional rules at California airports than at other airports.

Airports are not traditional free speech zones like parks. This is true of the prescreening areas open to the public as well as the postscreening areas. As the majority aptly observes, "Although portions of the airport are open to the general public, people usually come to the airport only to travel or to accompany a traveler. Travelers often are in a hurry, and the airport often is crowded." (Maj. opn., *ante*, at p. 459; see also *ibid.* [quoting *Lee*, *supra*, 505 U.S. at pp. 683–684].) People do not go to airports to relax or to socialize, to be entertained or to spend time; they go to airports to get themselves or their friends and loved ones safely and efficiently to their destination. The parties' stipulation of agreed facts (as well as common experience) tells us that "[t]he 'basic purpose' of LAX is to facilitate, process and serve the traveling public in getting to and from airline flights and moving into and out of the airport terminal areas in a safe, secure, convenient, and efficient fashion." LAX is not, and should not be declared to be, a free speech public forum under either the United States or the California Constitution.

In concluding that California constitutional law should differ from First Amendment law regarding airports, Justice Kennard relies "primarily" on two cases: *Fashion Valley Mall, LLC v. National Labor Relations Bd.* (2007) 42 Cal.4th 850 [69 Cal.Rptr.3d 288, 172 P.3d 742] (*Fashion Valley*) and *In re Hoffman* (1967) 67 Cal.2d 845 [64 Cal.Rptr. 97, 434 P.2d 353] (*Hoffman*). (Conc. opn. of Kennard, J., *ante*, at p. 461.) Neither case addresses, much less answers, this question.

*Hoffman*, *supra*, 67 Cal.2d 845, held that "First Amendment activities [cannot] be prohibited [at train stations] solely because the property involved is not maintained primarily as a forum for such activities." (*Id.* at p. 850.) For three reasons, that opinion has nothing to do with the issue here. First, *Hoffman* cited solely the First Amendment with no hint that the California Constitution should diverge from First Amendment law in this area. Second,

*Hoffman* concerned train stations in the 1960's, not airports in the 21st century. As the *Lee* court—in an opinion long predating September 11, 2001—noted, there are major differences between airports and other " 'transportation nodes.' " (*Lee, supra,* 505 U.S. at p. 681.) "To blithely equate airports with other transportation centers, therefore, would be a mistake." (*Id.* at p. 682.) Finally, *Hoffman* simply did not address the question whether a train station is a *public forum* under the First Amendment, much less whether it is one under the California Constitution, which it never cites. *Hoffman* held only that free speech rights exist at train stations, which is also true of airports even under my conclusion that they are not public forums. (See pt. B., *post.*) But *Hoffman* conducted no public forum analysis, which is not surprising given that the First Amendment public forum doctrine largely developed *after* that opinion. It never considered what *level* of protection speech receives at train stations: the highest level reserved for true public forums or the lower level given nonpublic forums.[1]

*Fashion Valley, supra,* 42 Cal.4th 850, held that a shopping mall is a public forum under the California Constitution.[2] A shopping mall is entirely different from an airport for free speech purposes. As *Fashion Valley* noted, "in many cities the public areas of the shopping mall are replacing the streets and sidewalks of the central business district, which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " (42 Cal.4th at p. 858.) None of this is remotely true of airports. To equate an airport with a free speech zone is to ignore reality and, perhaps worse, trivialize free speech interests at true public forums.

## B. *The Standard Applicable to a Nonpublic Forum*

Declaring an area a nonpublic forum does not mean free speech rights do not exist there. Free speech rights exist on public property open to the public whether or not the property is considered a public forum. This is true under the First Amendment and, I have no doubt, also true under the California Constitution. My conclusion that an airport is not a public forum just means that restrictions on speech at an airport are not subject to the same level of

---

[1] The *Hoffman* opinion does say that in one "respect, a railway station is like a public street or park." (*Hoffman, supra,* 67 Cal.2d at p. 851.) But saying that a railway station is like a public street in one respect does not mean the court found it to be a public forum under a later-developed doctrine that it never mentioned.

[2] I dissented in *Fashion Valley, supra,* 42 Cal.4th 850, but only because the shopping mall at issue there was private property. (*Id.* at pp. 870–882.) If the shopping mall had been public property, I would have agreed that it was a public forum. But LAX is public property. Accordingly, the disagreement between the majority and dissent in *Fashion Valley* is irrelevant here.

"highest scrutiny" that applies to the "regulation of speech on government property that has traditionally been available for public expression . . . ." (*Lee, supra*, 505 U.S. at p. 678.) As the high court explained, designating property as a public forum would mean that a restriction of speech on that property "could be sustained only if it was narrowly tailored to support a compelling state interest." (*Id.* at p. 676.) A restriction on speech at a nonpublic forum such as an airport must still pass a constitutional test, albeit a less rigorous one. "The challenged regulation need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." (*Id.* at p. 679.)

I would conclude that the ordinance at issue here passes this test for the reasons the majority gives for concluding it would pass even the more rigorous test reserved for public forums. Accordingly, I concur with the majority opinion.

Baxter, J., and Corrigan, J., concurred.