Filed 9/3/13  P. v. Flores CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039103 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 211288) |
| v. | |
| BERNARD FLORES, | |
| Defendant and Appellant. | |

Appellant Bernard Flores appeals from the November 9, 2012 order committing him as a sexually violent predator (SVP) to an indeterminate term pursuant to Welfare and Institutions Code section 6604.[1]  He claims that his involuntary commitment violates the equal protection guarantees provided by the state and federal Constitutions.

In *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee*), the California Supreme Court recognized that persons who are civilly committed as Mentally Disordered Offenders (MDO's) or whose commitments are extended after being found not guilty by reason of insanity (NGI's) are subject to short, definite terms of commitment whereas persons found to be SVP's are committed to an indeterminate term of commitment. (*McKee*, *supra*, 47 Cal.4th at pp. 1202, 1207.)  The court concluded that SVP's were similarly situated to these other groups of committees.  (*Id.* at pp. 1204, 1207.)  It

---

[1]     All further statutory references are to the Welfare and Institutions Code.

1

remanded the matter to the trial court "to determine whether the People . . . can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id*. at pp. 1208-1209, fn. omitted.) The trial court resolved this question in favor of the People on remand and its order was affirmed on appeal by the California Court of Appeal, Fourth District, Division 1 in *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*). On October 10, 2012, the Supreme Court denied review in that case (S204503).

Appellant maintains that the *McKee II* decision is fatally flawed. He asks this court to remand this matter for further proceedings pursuant to the Supreme Court's *McKee* decision. We are satisfied that no remand is necessary and affirm.

I

*Procedural History*

In a previous appeal, appellant challenged an April 22, 2009 order committing him as an SVP to an indeterminate term of commitment (H034199). (See Evid. Code, §§ 452, subd. (d); 459.) In response to his equal protection challenges to the indeterminate term, we reversed and remanded the matter for the limited purpose of further proceedings consistent with our opinion and *McKee*, *supra*, 47 Cal.4th 1172.

On November 9, 2012, after the denial of review in *McKee II*, the superior court again ordered appellant committed to an indeterminate term. It is from this order that appellant now appeals.

II

*Equal Protection and the Alleged Flaws in McKee II*

Appellant contends that his indeterminate commitment contravenes his rights to equal protection under the law because "[h]e has a more difficult burden to regain freedom than similarly situated persons committed under other civil commitment schemes and no sufficient justification has been presented." He urges this court not to accept the conclusions of *McKee II*.

2

Appellant maintains that *McKee II* is fatally flawed.  He claims that the reviewing court erred by (1) failing to conduct a de novo review and (2) misapplying the strict scrutiny test.  He also asserts that the evidence did not support the determinations in *McKee II*.  We address these claims sequentially.

A.  *De Novo Review*

Appellant argues that the appellate court in *McKee II* "should have independently looked at the evidence presented by both parties and determined if the findings made by the trial court were correct" but that court failed to do so.

The *McKee II* opinion does not demonstrate that the appellate court failed to conduct de novo review.  It shows the opposite.

The appellate court stated: "McKee asserts, and we agree, that we review de novo the trial court's determination whether the Act, as amended by Proposition 83, violates his equal protection rights.  We independently determine whether the People presented substantial, factual evidence to support a reasonable perception that SVP's pose a unique and/or greater danger to society than do MDO's and NGI's, thereby justifying the disparate treatment of SVP's under the Act."  (*McKee II*, *supra*, 207 Cal.App.4th at p. 1338.)  The appellate court observed that "the trial court's statement of decision did not make any express findings regarding disputed historical facts or the credibility of certain witnesses."  (*Id*. at p. 1338, fn. 3.)  The appellate court believed that it was "in as good a position as the trial court to decide whether the evidence presented by the People during the remand hearing satisfied their burden to justify the disparate treatment of SVP's under the Act."  (*Ibid*.)

The appellate court did state:  "In independently reviewing the evidence admitted at the remand hearing, we must determine whether the People presented *substantial evidence* to support a reasonable inference or perception that the Act's disparate treatment of SVP's is necessary to further compelling state interests.  [Citations.]"  (*Id*. at p. 1339, italics added.)  Its use of the phrase "substantial evidence" shows merely that it was

following the Supreme Court's direction in *McKee*. In *McKee*, the Supreme Court stated: "When a constitutional right, such as the right to liberty from involuntary confinement, is at stake, the usual judicial deference to legislative findings gives way to an exercise of independent judgment of the facts to ascertain whether the legislative body 'has drawn reasonable inferences based on substantial evidence.' (*Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 569 . . . , citing *Turner Broadcasting System, Inc. v. FCC* (1994) 512 U.S. 622, 666, 114 S.Ct. 2445, 129 L.Ed.2d 497 (lead opn. of Kennedy, J.); see also *Spiritual Psychic Science Church v. City of Azusa* (1985) 39 Cal.3d 501, 514 . . . .)" (*McKee*, *supra*, 47 Cal.4th at p. 1206.) The *McKee II* opinion does not indicate that the appellate court erroneously applied the deferential substantial evidence standard of review, under which courts review the evidence in the light most favorable to the judgment below (see *Jackson v. Virginia* (1979) 443 U.S. 307, 318-320 [99 S.Ct. 2781]; *People v. Johnson* (1980) 26 Cal.3d 557, 578).

B. *Strict Scrutiny Standard of Review*

In *McKee II*, the appellate court concluded: "[T]he trial court correctly found the People presented substantial evidence to support a reasonable perception by the electorate that SVP's present a substantially greater danger to society than do MDO's or NGI's, and therefore the disparate treatment of SVP's under the Act is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered." (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1330-1331.) Appellant maintains that the appellate court "demonstrated a flawed understanding of the strict scrutiny test" and its conclusion's "characterization [of the strict scrutiny test] more closely resembles the rational basis test."[2] He asserts that the appellate court in *McKee II* "looked only at

_____

[2] The appellate court in *McKee II* clearly did not engage in rational basis review. "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. [Citations.] Such a classification

4

whether the perception of the voters was reasonable, and not at whether that perception was accurate" and "wrongly assumed" that the People were required to show only that SVP's are more dangerous than MDO's and NGI's and the People did not need to show that the disparate treatment of SVP's was "necessary because of that greater danger."

The appellate court description of the strict scrutiny standard of review shows that it understood that the means must be *necessary* to promote the compelling state interest. The court stated: " 'Strict scrutiny is the appropriate standard against which to measure claims of disparate treatment in civil commitment.' (*People v. Green* (2000) 79 Cal.App.4th 921, 924 . . . .)  Applying the strict scrutiny standard, the state has the burden of establishing it has a compelling interest that justifies the law and that the distinctions, or disparate treatment, made by that law are necessary to further its purpose.  (*Warden v. State Bar* (1999) 21 Cal.4th 628, 641 . . . .)  Alternatively stated, applying the strict scrutiny standard, a law 'is upheld only if it is necessary to further a compelling state

---

cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.  [Citations.] Further, a legislature that creates these categories need not 'actually articulate at any time the purpose or rationale supporting its classification.'  [Citations.]  Instead, a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'  [Citations.]"  (*Heller v. Doe by Doe* (1993) 509 U.S. 312, 319-320 [113 S.Ct. 2637].)  Under the rational basis test, a state "has no obligation to produce evidence to sustain the rationality of a statutory classification."  (*Id*. at p. 320.)  In that situation, " '[a] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.'  [Citations.]"  (*Ibid*.) Under rational basis review, "[a] statute is presumed constitutional [citation] and '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it' [citation], whether or not the basis has a foundation in the record."  (Id. at pp. 320-321.)  "Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends.  A classification does not fail rational-basis review because it ' "is not made with mathematical nicety or because in practice it results in some inequality." ' [Citations.]"  (*Id*. at p. 321.)

5

interest.'  (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1156 . . . .)"  (*McKee II*, *supra*, 207 Cal.App.4th at p. 1335.)

It is possible that, as appellant claims, the appellate court in *McKee II* believed that the necessity requirement "meant something different than 'least restrictive means.' "  The court expressly stated that it was not persuaded that "the equal protection clause requires that disparate treatment of similarly situated classes be not only necessary to further a compelling state interest, but also accomplished through the least restrictive means available."  (*Id*. at pp. 1348-1349.)  It did not believe that "the electorate that passed Proposition 83 in 2006 was required to adopt the least restrictive means available (e.g., a two-year or other determinate term of civil commitment) in disparately treating SVP's and furthering the compelling state interests of public safety and humane treatment of the mentally disordered."  (*Id.* at p. 1349.)

While we agree that the availability of *equally efficacious* but less burdensome means of accomplishing a compelling state interest is a consideration in strict scrutiny analysis,[3] the appellate court clearly understood that the strict scrutiny test required the

---

[3]     See e.g. *Citizens United v. Federal Election Com'n* (2010) 558 U.S. 310, 340 [130 S.Ct. 876] ["Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'  [Citation.]"]; *Zablocki v. Redhail* (1978) 434 U.S. 374, 388 [98 S.Ct. 673] ["When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.  [Citations.]"], 389 [statute precluding state resident with judicially imposed child support obligations from marrying without court permission held unconstitutional where "the State already ha[d] numerous other means for exacting compliance with support obligations, means that are at least as effective as the instant statute's and yet do not impinge upon the right to marry"]; *Dunn v. Blumstein* (1972) 405 U.S. 330, 342 [92 S.Ct. 995] ["durational residence laws [for voting] must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are 'necessary to promote a compelling governmental interest.'  [Citations.]"], 343 ["It is not sufficient for the State to show that durational residence requirements further a very substantial state interest.  In pursuing that important interest, the State cannot choose

6

government to "show both a compelling state interest justifying the disparate treatment *and* that the disparate treatment is necessary to further that compelling state interest. [Citations.]" (*McKee II*, *supra*, 207 Cal.App.4th at p. 1349.) Narrow tailoring to serve a compelling state interest does not require consideration of every conceivable alternative; it requires only consideration of workable alternatives that will achieve that interest about as well. (See *Grutter v. Bollinger* (2003) 539 U.S. 306, 339 [123 S.Ct. 2325].)

Over a decade ago, the California Supreme Court recognized that "[t]he problem targeted by the [SVPA] is acute, and the state interests — protection of the public and mental health treatment — are compelling. [Citations.]" (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1153, fn. 20.) In *McKee II*, the People presented evidence that the vast majority of SVP's suffered paraphilia disorders, such disorders are persistent and pervasive, and most SVP committees are not amenable to treatment. This showing was particularly significant with regard to the future dangerousness of SVP's and the SVPA's provision for an indeterminate term of commitment subject to a committee's petition for discharge in which the committee bears the burden of proof (§ 6608). Appellant has suggested that, based on evidence in *McKee II* that SVP treatment could be completed in five years, a five-year commitment term would be a less restrictive alternative and the appellate court failed to consider that alternative.

Not all the People's experts in *McKee II* agreed that SVP's ordinarily completed treatment in five years. One psychologist indicated that "[t]reatment of paraphilia patients takes longer than for other patients because paraphilia is so pervasive, affecting their thoughts, beliefs, and interactions" and she "estimated that effective treatment of

means that unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with 'precision,' [citations], and must be 'tailored' to serve their legitimate objectives. [Citation.] And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.' [Citation.]"

7

SVP's with paraphilia generally requires more than 10 years." (*Id*. at p. 1346.) Moreover, there was also evidence that "nearly 90 percent of SVP's are diagnosed with pedophilia or other paraphilias" (*id.* at p. 1344), paraphilia typically persists throughout a patient's lifetime (*id*. at p 1345), treatment of SVP's is not "based on medications, but rather on giving them the tools to limit their risk of sexually reoffending" (*ibid*.), and "only about 25 percent of SVP's participate in treatment" (*ibid*.). Given the totality of the People's showing disclosed in *McKee II*, appellant has not convinced us that a five-year term of commitment was shown to be a less restrictive alternative that would equally accomplish the compelling state's interests of protecting the public and treating dangerous SVP's or that any such alternative exists.

C. *Application of Strict Scrutiny Standard*

Appellant argues that the People's evidence in *McKee II* did not satisfy the strict scrutiny standard. In *McKee II*, the appellate court examined evidence in three areas: recidivism, the greater trauma of victims of sexual offenses, and the diagnostic and treatment differences. (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1340-1347.) Appellant attacks the evidence in each category.

With respect to recidivism, the appellate court in *McKee II* acknowledged the People's evidence did not "show SVP's have, in fact, a higher sexual recidivism rate than MDO's and NGI's" as classes. (*Id*. at p. 1342.) But the court concluded that the Static-99 evidence supported "by itself, a reasonable inference or perception that SVP's pose a higher risk of sexual reoffending than do MDO's or NGI's." (*Ibid*.)

With respect to victim trauma, the appellate court in *McKee II* found that the People had "presented evidence that the victims of sex offenses suffer unique and, in general, greater trauma than victims of nonsex offenses." (*Ibid*.) There was testimony that "[s]exual abuse causes the greatest trauma of adverse childhood experiences." (*Ibid*.) The court concluded that "there is substantial evidence to support a reasonable perception by the electorate, as a legislative body, that the harm caused by child sexual abuse and

8

adult sexual assault is, in general, a greater harm than the harm caused by other offenses and is therefore deserving of more protection." (*Id*. at pp. 1343-1344.)

Appellant suggests that "the proper comparison," which the appellate court in *McKee II* did not make, was between the general reoffense rates of the three groups of committees rather than between their sexual reoffense rates. Appellant complains that the appellate court did not cite any "evidence regarding the effects of other types of crimes and the trauma suffered by victims of those crimes" and there was no evidence that victims of MDO's or NGI's suffered comparatively less trauma.

Appellant has not established that *McKee II's* analysis is fatally defective because it did not compare the general danger presented by MDO's and NGI's with the general danger presented by SVP's or discuss the trauma experienced by victims of those former groups. The SVPA targets the danger of sexual reoffense due to a mental disorder. There was a factual basis for the legislative body believing that SVP's pose a special danger of sexual reoffense and the victims of these offenses suffered an especially acute injury. "[A]n equal protection violation does not occur merely because different statutory procedures have been included in different civil commitment schemes. (See *Hofferber*, *supra*, 28 Cal.3d 161, 172 . . . [Legislature 'may adopt more than one procedure for isolating, treating, and restraining dangerous persons'].) Nothing compels the state 'to choose between attacking every aspect of a problem or not attacking the problem at all.' (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1312-1313 . . . .) Far from having to 'solve all related ills at once' (*People v. Cooper* (1996) 43 Cal.App.4th 815, 829. . . ), the Legislature has 'broad discretion' to proceed in an incremental and uneven manner without necessarily engaging in arbitrary and unlawful discrimination. (*People v. Ward* (2005) 36 Cal.4th 186, 217 . . . .)" (*People v. Barrett* (2012) 54 Cal.4th 1081, 1110.)

Appellant maintains that the appellate court's analysis of the differences in diagnoses and treatment was also defective. He reiterates his allegation that the appellate court in *McKee II* erroneously conducted a substantial evidence review rather than a de

9

novo review. We have already rejected this contention. He also repeats his argument that the appellate court failed to consider the least restrictive means. As already explained, appellant has not persuaded us that there is a less restrictive but efficacious alternative to an indeterminate term of commitment.

Appellant also asserts that "treatment is not actually required before an SVP is eligible for release." While this may be true in the abstract, the evidence of the persistence of paraphilias suggests that individual committees will ordinarily require treatment to reduce their risk of sexual reoffending sufficiently to no longer qualify as SVP's.

The persistence and pervasiveness of the paraphilia disorders usually suffered by SVP's and their general lack of amenability to treatment must be regarded as particularly relevant to whether they pose a greater danger to society that necessitates an indeterminate term of commitment and the concomitant shifting of the burden of proof for discharge. As indicated, the People adduced evidence that the vast majority of SVP's are diagnosed with pedophilia or other paraphilias, a paraphilia is pervasive and ordinarily persists throughout a patient's lifetime, medication does not decrease the deviant sexual interests of SVP's, treatment is not focused on medication but on tools to limit the risk of reoffense, and most SVP's do not participate in treatment. (See *McKee II*, *supra*, 207 Cal.App.4th at pp. 1344-1346.) In contrast, only a very small percentage of MDO's and NGI's suffer from pedophilia or other paraphilias, patients with severe mental illnesses are treated with psychotropic medications and then psychosocial therapy and their amenability to and compliance with treatment usually is very good, and two-thirds of MDO's and NGI's comply with their treatment programs and are typically decertified after about three years. (*Ibid.*) In light of this contrasting evidence, we discern no defect in the court's conclusion that "the disparate treatment of SVP's under the Act is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered." (*Id*. at p. 1331.)

10

We reject appellant's suggestion that the People were required to prove that SVP's are actually more dangerous as a class than MDO's and NGI's by producing evidence allowing a comparison of recidivism rates and the harm suffered by victims of each group. For purposes of strict scrutiny, it is enough that SVP's as a group differ materially from MDO's and NGI's in terms of their diagnosis and treatment and, consequently, their need for ongoing commitment.

It appears from our examination of *McKee II* that the state's showing was sufficient to survive strict scrutiny. Moreover, while legislative distinctions among SVP's, MDO's, and NGI's must be "factually based," they need not be "incontrovertible or uncontroversial." (*McKee*, *supra*, 47 Cal.4th at pp. 1210-1211.) "[M]ere disagreement among experts will not suffice to overturn the Proposition 83 amendments." (*Id.* at p. 1210.) Appellant has not demonstrated that further adjudication of the equal protection issue is warranted.

D. *Conclusion*

In light of the Supreme Court's clearly expressed intent to avoid an unnecessary multiplicity of proceedings with respect to equal protection challenges in SVP cases (see *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1378; *People v. McKnight* (2012) 212 Cal.App.4th 860, 863-864), the Supreme Court's denial of review in *McKee II*, and our conclusions regarding the asserted flaws in *McKee II*, we find the equal protection arguments advanced in this appeal are without merit and do not require a remand for a further evidentiary hearing.

DISPOSITION

The November 9, 2012 order of commitment is affirmed.

11

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.